**IN THE DISTRICT COURT OF CLEVELAND COUNTY**
**STATE OF OKLAHOMA**

STATE OF OKLAHOMA } S.S.
CLEVELAND COUNTY }
**FILED** In The
Office of the Court Clerk

APR 15 2019

In the office of the
Court Clerk MARILYN WILLIAMS

| | )
|---|---|
| EMERGENCY SERVICES OF OKLAHOMA, | ) |
| PC, OKLAHOMA EMERGENCY SERVICES, | ) |
| PC, SOUTH CENTRAL EMERGENCY | ) |
| SERVICES, PC, and EMERGENCY | ) |
| PHYSICIANS OF MID-AMERICA, P.C., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No.   CJ-2019-488 |
| | ) |
| UNITED HEALTHCARE INSURANCE | ) |
| COMPANY, UNITED HEALTHCARE | ) |
| SERVICES, INC., and UNITED | ) |
| HEALTHCARE OF OKLAHOMA, INC., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' ORIGINAL PETITION

COME NOW Plaintiffs Emergency Services of Oklahoma, P.C., Oklahoma Emergency Services, P.C., South Central Emergency Services, P.C., and Emergency Physicians of Mid-America, P.C., by and through the undersigned counsel, and file this Original Petition against Defendants United HealthCare Insurance Company, United HealthCare Services, Inc., and United HealthCare of Oklahoma, Inc. (collectively, "Defendants" or the "Insurance Companies") and allege as follows:

## INTRODUCTION

1.      Plaintiffs Emergency Services of Oklahoma, P.C., Oklahoma Emergency Services, P.C., South Central Emergency Services, P.C., and Emergency Physicians of Mid-America, P.C. (collectively, "Plaintiffs" or the "Plaintiff Doctors") are four groups of physicians who provide emergency care to thousands of citizens of Oklahoma. Unlike most other physicians, who generally have the ability to choose the patients that they treat, these doctors do not. By necessity and under compulsion of federal law, Plaintiff Doctors are obligated to treat all patients who require emergency services. In recognition of the nature and critical importance of these services, Oklahoma law requires health insurers to compensate emergency medicine physicians at reasonable rates, whether or not the doctors are part of the insurers' preferred provider networks. Reasonable compensation is essential to permit Plaintiff Doctors to continue to provide high-quality emergency services and to attract and retain physicians who are willing to work long hours under great stress in order to perform life-saving medical services in otherwise underserved areas of Oklahoma.

2.      The Insurance Companies historically have compensated Plaintiff Doctors at more reasonable rates, as required under Oklahoma law. In recent years, however, the Insurance Companies began slashing the rates at which they paid Plaintiff Doctors for their emergency services. The Insurance Companies began paying some of the claims for emergency services rendered by Plaintiff Doctors at rates that are substantially below the historic levels for the same services and significantly below the rates at which the Insurance Companies continued to pay other substantially identical claims.

3.      One explanation for this disparity is that the Insurance Companies are reimbursing Plaintiff Doctors for services provided to members of the plans they fully underwrite at

significantly lower rates than they are reimbursing Plaintiff Doctors for services provided to members of the employer-funded plans for which the Insurance Companies only provide administrative services.

4.      This action seeks damages for the Insurance Companies' violations of Oklahoma law and to compel the Insurance Companies to abide by Oklahoma law with respect to payment of future claims.

## PARTIES

5.      Plaintiff Emergency Services of Oklahoma, P.C. is a professional emergency medicine services group practice that staffs the emergency departments at Norman Regional Hospital in Norman, AllianceHealth Deaconess Hospital in Oklahoma City, AllianceHealth Ponca City in Ponca City, Alliance Health Woodward in Woodward, Integris Canadian Valley Hospital in Yukon, Integris Grove General Hospital in Grove, Integris Southwest Medical Center in Oklahoma City, Heart Hospital North Campus in Oklahoma City, Oklahoma Heart Hospital South Campus in Oklahoma City, and St. Mary's Regional Medical Center in Enid.

6.      Plaintiff Oklahoma Emergency Services, P.C. is a professional emergency medicine services group practice that staffs the emergency departments at Comanche County Memorial Hospital in Lawton and McBride Clinic Orthopedic Hospital in Oklahoma City.

7.      Plaintiff South Central Emergency Services, P.C. is a professional emergency medicine services group practice that staffs the emergency departments at Duncan Regional Hospital in Duncan, Integris Baptist Regional Health in Miami, Integris Health Edmond in Edmond, and Stillwater Medical Center in Stillwater.

8.      Plaintiff Emergency Physicians of Mid-America, P.C. is a professional emergency medicine services group practice that staffs the emergency departments at McAlester Regional

Health Center in McAlester, St. Anthony Healthplex East in Oklahoma City, St. Anthony Healthplex Mustang Medical Center in Mustang, St. Anthony Healthplex North Medical Center in Oklahoma City, St. Anthony Healthplex South in Oklahoma City, St. Anthony Hospital in Oklahoma City, and St. Anthony Shawnee Hospital in Shawnee.

9.     Defendant United HealthCare Insurance Company is a Connecticut corporation with its principal place of business in Connecticut.  United HealthCare Insurance Company is responsible for paying for certain of the emergency medical services at issue in this Petition. On information and belief, United HealthCare Insurance Company is a licensed Oklahoma health insurance company.

10.     Defendant United HealthCare Services, Inc., is a Minnesota corporation with its principal place of business in Connecticut. United HealthCare Services, Inc. is responsible for paying for certain of the emergency medical services at issue in this Petition. On information and belief, United HealthCare Services, Inc., is a licensed Oklahoma health insurance company.

11.     Defendant United HealthCare of Oklahoma, Inc., is an Oklahoma corporation with a principal place of business in Tulsa, Oklahoma. United HealthCare of Oklahoma, Inc., is responsible for paying for certain of the emergency medical services at issue in this Petition. On information and belief, United HealthCare of Oklahoma, Inc., is a licensed Oklahoma health insurance company.

## JURISDICTION & VENUE

12.     Jurisdiction is proper pursuant to Okla. Stat. tit. 12, § 2004(F).

13.     Venue is proper pursuant to Okla. Stat. tit. 12, § 137 because a significant number of the services that form the basis of the Plaintiff Doctors' claims were performed in Cleveland County.

14.     The Insurance Companies are subject to personal jurisdiction in this state because they have entered into contracts to provide insurance to Oklahoma residents and conduct business in this State.

15.     Pursuant to Okla. Stat. tit. 12, § 2008, Plaintiff Doctors assert they seek damages in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## FACTS

### *The Plaintiffs Provide Necessary Emergency Care*

16.     This is an action for damages stemming from the Insurance Companies' failure to properly reimburse Plaintiff Doctors for emergency services provided to members of the Insurance Companies' health plans.[1]

17.     Plaintiff Doctors are emergency medicine physicians who staff emergency departments 24 hours a day, 7 days a week.  Plaintiff Doctors provide emergency department coverage at 23 emergency departments in Oklahoma.

---

[1] Plaintiff Doctors do not assert any cause of action with respect to any patient whose health insurance was issued under Medicare Part C (Medicare Advantage) or is provided under the Federal Employee Health Benefits Act (FEHBA).  Thus, there is no basis to remove this lawsuit to federal court under federal question jurisdiction.  Plaintiff Doctors also do not assert any claims relating to the Insurance Companies' Managed Medicare business.  As explained below, upon entry of an appearance by counsel for the Insurance Companies, Plaintiff Doctors will serve, via encrypted transmission, a list of the individual healthcare claims at issue in this litigation.  To the extent that list contains any healthcare claims relating to Managed Medicare, FEHBA, or Managed Medicaid business, Plaintiff Doctors will remove them upon notice by the Insurance Companies.

18.    As providers of emergency medical care, Plaintiff Doctors have made a commitment to providing emergency medical services to all patients, regardless of insurance coverage or ability to pay, including to patients with insurance coverage issued or underwritten by the Insurance Companies.

19.    This philosophy is reflected in the federal Emergency Medical Treatment and Labor Act ("EMTALA"), which requires emergency room physicians to evaluate, stabilize, and treat all patients, regardless of their insurance status or ability to pay. *See* EMTALA, 42 U.S.C. § 1395dd.

20.    EMTALA is one of the central sources of patient protection in the United States healthcare system.

21.    However, EMTALA also places a financial burden on emergency medicine physicians, many of whom also adhere to grueling schedules and live in or commute to far-flung locations in order to ensure patients' access to emergency care.

22.    Emergency medicine physicians represent 4% of physicians in this country but provide 67% of unreimbursed care.

23.    On average, an Emergency medicine physician provides almost $140,000 of charity care every year, and a third of emergency physicians provide more than 30 hours of charity care each week.

24.    Almost 1 in 5 emergency patients has no ability to pay, and 3 out of 4 emergency room visits are reimbursed below cost.

25.    In recognition of the challenges unique to the practice of emergency medicine, Oklahoma law affords emergency medicine physicians certain protections.

26.    Plaintiff Doctors' claims fall into two categories: (1) claims subject to Oklahoma law governing health maintenance organizations ("HMOs"), and (2) other claims not subject to

Oklahoma law governing HMOs. For the purposes of this Petition, these claims are collectively referred to as the "Non-Participating Claims" and sometimes are separately referred to as the "Non-Participating HMO Claims" and "Other Non-Participating Claims."

27.     For the Non-Participating HMO claims, Oklahoma law requires the Insurance Companies to reimburse Plaintiffs doctors, at a minimum, at the "prevailing charges" in the geographic area where Plaintiff Doctors provide their services. *See* Okla. Stat. tit. 36, § 6571(A)(2); Okla. Admin. Code 365:40-5-123(e)(l).

28.     For the Other Non-Participating Claims, Oklahoma law requires the Insurance Companies to reimburse Plaintiff Doctors at rates, at a minimum, equivalent to the reasonable value of Plaintiff Doctors' services.

29.     These guarantees are imperative to ensuring that emergency medicine physicians remain able to offer high quality services to Oklahoma residents. They account for the expenses associated with emergency medicine physicians' education and continued training and incentivize emergency medicine physicians to move to underserved areas, ensuring that emergency medical services are available across the state.

*The Insurance Companies Underpaid the Plaintiffs for Emergency Services*

30.     The Insurance Companies are national managed care organizations that underwrite, operate and administer Health Plans, including HMOs, in Oklahoma.

31.     In exchange for premiums and/or fees or other compensation, the Insurance Companies pay for health care services rendered to their members, including the emergency medicine services Plaintiff Doctors have provided and continue to provide to the Insurance Companies' members.

32.     In spite of the essential role emergency medicine physicians such as Plaintiff Doctors play in the United States healthcare system, the Insurance Companies have refused to offer sustainable provider contracts to Plaintiff Doctors.

33.     Because there is no contract between the Insurance Companies and any of Plaintiff Doctors for the healthcare claims at issue in this litigation, Plaintiff Doctors are designated as "non-participating" or "out-of-network" for all of the claims at issue in this litigation.

34.     Because Plaintiff Doctors did not participate in the Insurance Companies' provider network, there was no agreed rate.  The Insurance Companies are therefore obligated to reimburse Plaintiff Doctors at the "prevailing charges" in the geographic area where Plaintiff Doctors provide their services or at rates, at a minimum, equivalent to the reasonable value of Plaintiff Doctors' services.

35.     Oklahoma law requires that, for the Non-Participating HMO Claims, the Insurance Companies are required to give notice to providers such as Plaintiffs that they "shall bill" the Insurance Companies "directly" for reimbursement claims arising from Plaintiffs' treatment of the Insurance Companies' members.

36.     At all material times, the Plaintiffs have billed the Insurance Companies directly for their Non- Participating Claims arising from Plaintiffs' treatment of the Insurance Companies' members.

37.     The Insurance Companies have received and accepted Plaintiffs' bills for the emergency medicine services Plaintiffs have provided and continue to provide to the Insurance Companies' members. The Insurance Companies have consistently adjudicated and paid, and continue to adjudicate and pay, the Plaintiffs directly for the Non-Participating Claims, albeit at amounts less than that required by Oklahoma law.

38.     By assuming responsibility for paying for the emergency medical services provided to the Insurance Companies' patients, the Insurance Companies are both obligated under Oklahoma law, and have impliedly agreed, to reimburse Plaintiffs at rates in accordance with the standards established by Oklahoma law.

39.     Despite not participating in the Insurance Companies' provider network for the time at issue, Plaintiff Doctors regularly provide emergency services to the Insurance Companies' health plan enrollees.

40.     From January 2016 to September 2018, Plaintiff Doctors have provided emergency medical services to thousands of the Insurance Companies' health plan enrollees.

41.     The Insurance Companies' members have received a wide variety of emergency services (in some instances, life-saving services) from Plaintiff Doctors, including treatment of conditions ranging from cardiac arrest, to broken limbs, to burns, to diabetic ketoacidosis and shock, to gastric distress and obstetrical distress

42.     In recent years, the Insurance Companies have continuously decreased their reimbursements to Plaintiff Doctors for services provided to certain of their members.

43.     These new reimbursement levels were significantly less than the rates called for by Oklahoma law.

44.     From January 2016 to September 2018, Plaintiff Doctors have identified more than 7,000 emergency service claims that the Insurance Companies paid at unacceptably low rates.

45.     The total underpayment amount for these claims is in excess of $3.8 million.

46.     As stated in ¶ 42, the Insurance Companies are reimbursing Plaintiff Doctors at unacceptably low rates for services provided to some of their members. They continue to reimburse Plaintiff Doctors at more reasonable rates for services provided to other of their members. The

result is that the Insurance Companies are reimbursing Plaintiff Doctors at drastically different rates for essentially the same services, provided at the same facility, to different members.

47.     Upon information and belief, the Insurance Companies generally are paying the lower reimbursement rates for services provided to their fully insured members and the higher reimbursement rates for services provided to members of their administrative services only or self-insured plans.

48.     Put differently, when their own money is at stake, rather than the money of one of their employer clients, the Insurance Companies pay the lower rate.

49.     For each of the healthcare claims at issue, the Insurance Companies determined the claim to be payable; however, they paid at an arbitrarily reduced rate.  Thus, the claims at issue involve no questions of whether the claim is payable; rather, they involve only the issue of whether the Insurance Companies paid the claim at the rate required by Oklahoma law.  (They did not.)

50.     Okla. Stat. tit. 36, § 6571 (A)(2) requires that "any insurer which . . . makes a determination or contracts with a third party who makes the determination of average area charges or customary and reasonable charges for health care services, procedures or supplies; and . . . based on such determination, authorizes payment in an amount which is less than the amount charged by the health care provider for such services, procedures or supplies . . . shall, upon the request of a health care provider, furnish the name, mailing address and telephone number of the party making the determination to the health care provider." Okla. Stat. tit. 36, § 6571 (A)(2).

51.     Okla. Admin. Code 365:40-5-123(e)(2) requires that "[i]f an HMO uses reasonable and customary charge determinations to authorize settlements, it shall: . . . [f]urnish or arrange to furnish the rationale and data sources for a determination, within ten (10) days after receipt of a provider's request for this information and for no more than a nominal copying fee."

52.     On February 4, 2019, Plaintiff Doctors sent a letter to the Insurance Companies formally requesting that the Insurance Companies provide Plaintiffs with the rationale and data sources for their determination of the rates they pay. Despite their obligation under Oklahoma law, pursuant to Okla. Stat. tit. 36, § 6571(A)(2) and Okla. Admin. Code 365:40-5-123(e)(2), to provide precisely that information to a provider within 10 days upon request, the Insurance Companies have failed to do so.

53.     In withholding from the Plaintiff Doctors what rationale, if any, they hav for the arbitrarily low rates they have and continue to pay the Plaintiff Doctors for their Non-Participating Claims, and the identity of the decision maker, the Insurance Companies are violating their express statutory and regulatory obligations under Oklahoma law.

54.     The Insurance Companies have failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of these claims.

55.     Plaintiff Doctors bring this action to collect damages due to the Insurance Companies' failure to comply with Oklahoma law and to compel the Insurance Companies to pay them the rates required by Oklahoma law for the emergency services that Plaintiff Doctors provided to their members.

56.     All conditions precedent to the institution and maintenance of this action have been performed, waived, or otherwise satisfied.

## COUNT I

### Violation of Oklahoma Clean Claim Reimbursement Laws

57.     Plaintiff Doctors re-allege and restate the preceding paragraphs as if they were fully set forth herein.

58.     The Insurance Companies, which include, an Oklahoma-licensed HMO, must comply with the requirements of Oklahoma law with respect to the Insurance Companies'

reimbursement of clean claims submitted by health care providers, including the Plaintiff Doctors, as set forth in Oklahoma's prompt pay law, Title 36 of the Oklahoma statutes, and the regulations promulgated thereunder ("Clean Claim Reimbursement Laws"). *See* Okla. Stat. tit. 36, § 1219; Okla. Stat. tit 36, § 6571; Okla. Admin. Code 365:40-5-120 *et seq.*

59.     Oklahoma law affords the Plaintiff Doctors a private right of action against the Insurance Companies for disputes arising from violations of the Clean Claim Reimbursement Laws, and further permits a prevailing provider to recover simple interest at the rate of percent (10%) per year and reasonable attorney's fees. Okla. Stat. tit. 36, § 1219(F)-(G).

60.     Oklahoma's Clean Claim Reimbursement Laws require that the Insurance Companies provide the Plaintiff Doctors with notice that they shall bill the Insurance Companies directly for the Non-Participating HMO Claims. Okla. Admin. Code 365:40-5-123(c)(2).

61.     Oklahoma's Clean Claim Reimbursement Laws require that the Insurance Companies, in authorizing payment of "reasonable and customary charges" to Plaintiff Doctors for the Non-Participating HMO Claims, must base such determinations on "prevailing charges" in the geographic area where the services were provided, and provide the data and rationale for those determinations to Plaintiff Doctors, upon request. Okla. Admin. Code 365:40-5-123(e)(l)(2).

62.     On information and belief, based upon their own determination of "reasonable and customary charges," the Insurance Companies authorized payment to Plaintiff Doctors for the Non-Participating HMO Claims at amounts less than the amounts charged by Plaintiff Doctors for their services.

63.     From January 2016 through September 2018, the Insurance Companies have paid, and continue to pay, Plaintiff Doctors for the Non-Participating HMO Claims at amounts substantially less than the "prevailing charges" in Plaintiff Doctors' respective geographic areas.

64.     Despite Plaintiff Doctors' request for the information used for the Insurance Companies' determinations of the rates they have paid Plaintiff Doctors on the Non-Participating HMO Claims, the Insurance Companies have failed and refused to provide Plaintiff Doctors with the data and information required by Oklahoma's Clean Claim Reimbursement Laws.

65.     The Insurance Companies' failure and refusal to reimburse Plaintiff Doctors for their Non- Participating HMO Claims at rates, at a minimum, equivalent to the "prevailing charges" in the geographic area where the services are provided, and the Insurance Companies' failure and refusal to furnish to Plaintiff Doctors the information supporting the Insurance Companies' rates of reimbursement both constitute violations of their obligations under Oklahoma's Clean Claim Reimbursement Laws.

66.     As a result of the Insurance Companies' violations of Oklahoma's Clean Claim Reimbursement Laws, Plaintiff Doctors have suffered injury and are entitled to monetary damages from the Insurance Companies to compensate them for that injury in an amount equal to the difference between the amounts allowed as payable by the Insurance Companies and the prevailing charges for professional emergency medicine services in the same geographic area, plus interest at the statutory rate and attorney's fees.

## COUNT II

### Breach of Implied-in-Fact Contract

67.     Plaintiff Doctors re-allege and restate the preceding paragraphs as if they were fully set forth herein.

68.     At all material times, Plaintiff Doctors were obligated under federal law to provide emergency medicine services to all patients presenting at the emergency departments they staff, including the Insurance Companies' members.

69.     At all material times, the Insurance Companies knew that Plaintiff Doctors were non-participating emergency medicine groups that provided emergency medicine services to their members.

70.     From January 2016 to September 2018, Plaintiff Doctors have undertaken to provide emergency medicine services to the Insurance Companies' members, and the Insurance Companies have undertaken to pay for such services provided to the Insurance Companies' members.

71.     Oklahoma law requires that, for the Non-Participating HMO Claims, the Insurance Companies shall give notice to non-participating providers such as Plaintiff Doctors that they "shall bill" the Insurance Companies "directly" for reimbursement claims arising from Plaintiff Doctors' treatment of the Insurance Companies' members. Okla. Admin. Code 365:40-5-123(c)(2).

72.     At all material times, the Insurance Companies were aware that Plaintiff Doctors were entitled to and expected to be paid at rates in accordance with the standards established under Oklahoma law.

73.     At all material times, Plaintiff Doctors have "directly" billed the Insurance Companies for the Non-Participating Claims[2] arising from the emergency medical services Plaintiff Doctors render to the Insurance Companies' members, based on the Insurance Companies' implied agreement to reimburse Plaintiff Doctors for those services at rates that complied with Oklahoma law.

---

[2] A list of the specific healthcare claims that the Insurance Companies have underpaid will be provided to the Insurance Companies by secure encrypted transmission upon entry of an appearance. The Insurance Companies' systemic underpayment of Plaintiff Doctors' claims is ongoing, and the doctors reserve the right to add additional healthcare claims as those claims are identified or accrue.

74.    At all material times, the Insurance Companies have received Plaintiff Doctors' bills for the emergency medicine services Plaintiff Doctors have provided and continue to provide to the Insurance Companies' members.

75.    The Insurance Companies have consistently adjudicated and paid, and continue to adjudicate and pay, the Plaintiff Doctors directly for the Non-Participating Claims, albeit at amounts less than that required by Oklahoma law.

76.    At all material times, Plaintiff Doctors were not parties to participation agreements with the Insurance Companies and did not agree to accept discounted rates from the Insurance Companies or to be bound by the Insurance Companies' reimbursement policies or rate schedules with respect to any of the Non-Participating Claims for emergency medical services Plaintiff Doctors rendered to the Insurance Companies' members.

77.    Through the parties' conduct and respective undertaking of obligations concerning emergency medicine services provided by Plaintiff Doctors to the Insurance Companies' members, the parties implicitly agreed, and Plaintiff Doctors had a reasonable expectation and understanding, that the Insurance Companies would reimburse Plaintiff Doctors for Non-Participating Claims at rates in accordance with the standards established under Oklahoma law.

78.    Under Okla. Stat. tit. 36, § 6571(A)(2) and Okla. Admin. Code 365:40-5-123(e)(l), the Insurance Companies, in issuing payment on the Non-Participating HMO Claims to Plaintiff Doctors in an amount less than Plaintiff Doctors' charges for their services rendered to the Insurance Companies' members, represented to Plaintiff Doctors and agreed that the rates the Insurance Companies would pay were, at a minimum, equivalent to the "prevailing charges" for emergency medicine services in the geographic area where they were provided.

79.     Under Oklahoma common law, including the doctrine of *quantum meruit,* the Insurance Companies, by undertaking responsibility for payment to Plaintiff Doctors for the services rendered to the Insurance Companies' members, impliedly agreed to reimburse Plaintiff Doctors at rates, at a minimum, equivalent to the reasonable value of the professional emergency medical services provided by Plaintiff Doctors.

80.     In breach of their implied contract with Plaintiff Doctors, the Insurance Companies have and continue to systemically adjudicate the Non-Participating Claims at rates substantially below both the prevailing charges in the geographic area and the reasonable value of the professional emergency medical services provided by Plaintiff Doctors to the Insurance Companies' members.

81.     Each of Plaintiff Doctors has performed all obligations under its implied contract with the Insurance Companies concerning emergency medical services to be performed for members.

82.     At all material times, all conditions precedent have occurred that were necessary for the Insurance Companies to perform their obligations under their implied contract to pay Plaintiff Doctors for the Non-Participating HMO Claims, at a minimum, based upon the "prevailing charges" in the geographic area, and to pay Plaintiff Doctors at rates, at a minimum, equivalent to the reasonable value of their services for the Other Non-Participating Claims.

83.     Plaintiff Doctors did not agree that the lower reimbursement rates paid by the Insurance Companies were reasonable or sufficient to compensate Plaintiff Doctors for the emergency medical services provided to Patients.

84.     As a result of the Insurance Companies' breach of the implied contract to pay Plaintiff Doctors for the Non-Participating Claims at the rates required by Oklahoma law, Plaintiff

Doctors have suffered injury and are entitled to monetary damages from the Insurance Companies to compensate them for that injury.

85.   For the Non-Participating HMO Claims, Plaintiff Doctors have suffered damages in an amount equal to the difference between the amounts allowed as payable by the Insurance Companies and the lesser of Plaintiff Doctors' charges and the prevailing charges for professional emergency medicine services in the same geographic area, plus the Plaintiff Doctors' loss of use of that money.

86.   For the Other Non-Participating Claims, Plaintiff Doctors have suffered damages in an amount equal to the difference between the amounts allowed as payable by the Insurance Companies and the lesser of Plaintiff Doctors' charges and the reasonable value of their professional emergency medicine services, plus Plaintiff Doctors' loss of use of that money.

**COUNT III**

**Unjust Enrichment/Breach of Implied-in-Law Contract**

87.   Plaintiff Doctors re-allege and restate the preceding paragraphs as if they were fully set forth herein.

88.   Plaintiff Doctors conferred a benefit upon the Insurance Companies by providing valuable emergency medicine services to the Insurance Companies' members for which the Insurance Companies were responsible for payment. In exchange for premiums and other forms of compensation, the Insurance Companies owe the Insurance Companies' members an obligation to pay Plaintiff Doctors for the covered medical services the members receive from Plaintiff Doctors. The Insurance Companies derive a benefit from Plaintiff Doctors' provision of emergency medicine services to their members, because it is through Plaintiff Doctors' provision of those services that the Insurance Companies fulfill their obligations to their members.

89.     There is no dispute that all of the emergency medicine services at issue in the Non-Participating Claims were covered, because the Insurance Companies already adjudicated and allowed them as payable, albeit at an amount less than required by Oklahoma law.

90.     The Insurance Companies voluntarily accepted, retained and enjoyed, and continue to accept, retain and enjoy, the benefits conferred upon it by Plaintiff Doctors, knowing that Plaintiff Doctors expected to be paid for the Non-Participating Claims at rates in accordance with the standards established under Oklahoma law.

91.     The Insurance Companies have been unjustly enriched by their failure and refusal to pay Plaintiff Doctors for the Non-Participating Claims at rates in accordance with the standards established under Oklahoma law for the emergency medicine services Plaintiff Doctors provided to the Insurance Companies' members. The Insurance Companies have unjustly enriched themselves by withholding from Plaintiff Doctors monies that, consistent with the standards established under Oklahoma law, the Insurance Companies should have paid to Plaintiff Doctors.

92.     Under the circumstances set forth above, it is unjust and inequitable for the Insurance Companies to retain the benefit they received without paying the value of that benefit; *i.e.,* by paying Plaintiff Doctors for the Non-Participating HMO Claims based upon the "prevailing charges" in the geographic area and for the Other Non-Participating Claims based upon *quantum meruit,* or the reasonable value of the emergency medicine services Plaintiff Doctors provided.

93.     Plaintiff Doctors seek compensatory damages, as permitted by Oklahoma law, in an amount which will continue to accrue through the date of trial as a result of the Insurance Companies' continuing unjust enrichment, equal to the difference between the amount the Insurance Companies adjudicated as payable for the emergency medicine services Plaintiff

Doctors provided to the Insurance Companies' members and the rates due in accordance with the standards established under Oklahoma law.

**COUNT IV**

**Declaratory Relief - Okla. Stat. tit. 12, § 1651**

94.     Plaintiff Doctors re-allege and restate the preceding paragraphs as if they were fully set forth herein.

95.     This is an action for declaratory and actual damages pursuant to Okla. Stat. tit. 12, § 1651.

96.     A bona fide and justiciable controversy exists that involves Plaintiff Doctors' substantial legal interests.

97.     All adverse parties are presently before the Court.

98.     A judicial declaration is necessary and appropriate to clarify the parties' respective rights and obligations concerning the rate of payment for Plaintiff Doctors' services, and no adequate remedy at law is available

99.     To prevent the need for a separate action enforcing Plaintiff Doctors' rights, Plaintiff Doctors seek a declaration from this Court stating that: (1) the Insurance Companies must pay Plaintiff Doctors going forward for their Non-Participating HMO Claims for the emergency medicine services their professionals render to the Insurance Companies' members at the prevailing charges for similar services in the same geographic area; and, (2) the Insurance Companies must pay Plaintiff Doctors going forward for their Other Non-Participating Claims for the emergency medicine services their professionals render to the Insurance Companies' members at the lesser of their billed charges and the reasonable value of Plaintiff's services.

19

## RELIEF REQUESTED & PRAYER

**WHEREFORE,** Plaintiffs pray that this Court enter judgment for Plaintiffs and against the Insurance Companies as follows:

For the Non-Participating HMO Claims for emergency medicine services rendered to Patients, enter judgments against the Insurance Companies and for each Plaintiff pursuant to Counts I, II and III in an amount representing the difference between the amounts allowed as payable by the Insurance Companies and the prevailing charges for similar services in the same geographic area, as determined by the finder of fact, plus interest;

For the Other Non-Participating Claims for emergency medicine services rendered to Patients, enter judgments against the Insurance Companies and for each Plaintiff pursuant to Counts II and III in an amount representing the difference between the amounts allowed as payable by the Insurance Companies and the reasonable value of the Plaintiff's services, as determined by the finder of fact, plus interest;

Decree pursuant to Count IV that: (1) the Insurance Companies must pay Plaintiffs going forward for their Non-Participating HMO Claims for the emergency medicine services their professionals render to the Insurance Companies' members at the lesser of Plaintiffs' billed charges and the prevailing charges for similar services in the same geographic area; and, (2) the Insurance Companies must pay Plaintiffs going forward for their Other Non-Participating Claims for the emergency medicine services their professionals render to the Insurance Companies' members at the lesser of Plaintiffs' billed charges and the reasonable value of Plaintiff's services; and Award attorney's fees, costs, interest and all other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

20

Respectfully Submitted,

Benjamin J. Odom, OBA #10917
John H. Sparks, OBA #15611
Michael W. Ridgeway, OBA #15657
ODOM, SPARKS & JONES, PLLC
Suite 140
HiPoint Office Building
2500 McGee Drive
Norman, OK 73072
(405) 701-1863
(405) 310-5394 FACSIMILE
odomb@odomsparks.com
sparksj@odomsparks.com
ridgewaym@odomsparks.com

Attorneys for Plaintiffs

EMERGENCY SERVICES OF OKLAHOMA, PC,
OKLAHOMA EMERGENCY SERVICES, PC,
SOUTH CENTRAL EMERGENCY SERVICES,
PC, and
EMERGENCY PHYSICIANS OF MID-
AMERICA, P.C.